IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUSAN E. LEE,

                         Plaintiff,                                    CV-08-140-ST

              v.                                            AMENDED FINDINGS AND
                                                            RECOMMENDATIONS
SUN LIFE ASSURANCE COMPANY OF
CANADA,

    _____ Defendant. _____

STEWART, Magistrate Judge:

## **INTRODUCTION**

        Plaintiff, Susan E. Lee, filed this action under the Employee Retirement Income Security

Act, 29 USC §§ 1001 *et seq,* ("ERISA"), to recover $500,000.00 of accidental death and

dismemberment ("AD&D") benefits for the death of her husband under an employee benefit plan

sponsored by her employer, Triad Hospitals, Inc. ("Triad").  Triad funded the AD&D benefits

through a group insurance policy issued by defendant Sun Life Assurance Company of Canada

1 - AMENDED FINDINGS AND RECOMMENDATIONS

("Sun Life").  The court granted a Judgment for Lee on January 8, 2010 (docket #55).  On

January 21, 2010, Lee timely filed a motion seeking an award of attorney fees in the amount of

$80,912.50, plus $224.00 in costs and prejudgment interest in the amount of $89,017.64 (docket

#57).  However, she subsequently reduced her request for attorney fees to the sum of $71,925.00

and her request for prejudgment interest to $59,908.72 (docket #72).  For the reasons set forth

below, Lee should be awarded the sum of $43,750.00 for attorney fees, $224.00 for costs, and

prejudgment interest in an amount to be calculated.

## FINDINGS

### I.    Whether to Award Attorney Fees and Costs

In an ERISA action to recover unpaid disability benefits, "the court in its discretion may

allow a reasonable attorney's fee and costs of action to either party."  29 USC § 1132(g)(1).

According to the Ninth Circuit, "[t]his section should be read broadly to mean that a plan

participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under his

plan, should ordinarily recover an attorney's fee unless special circumstances would render such

an award unjust."  *Smith v. CMTA-IAM Pension Trust*, 746 F2d 587, 589 (9th Cir 1984) (internal

quotations omitted).

In determining whether to award fees and costs, the Court should consider the following

five factors, often referred to as the "*Hummell* factors:"

> (1) the degree of the opposing parties' culpability or bad faith; (2) the
> ability of the opposing parties to satisfy an award of fees; (3) whether an
> award of fees against the opposing parties would deter others from acting
> in similar circumstances; (4) whether the parties requesting fees sought to
> benefit all participants and beneficiaries of an ERISA plan or to resolve a
> significant legal question regarding ERISA; and (5) the relative merits of
> the parties' positions.

2 - AMENDED FINDINGS AND RECOMMENDATIONS

*Hummell v. S.E. Rykoff & Co.*, 634 F2d 446, 453 (9th Cir 1980).

With respect to the first *Hummel* factor, this court found no indication that Sun Life denied Lee's claim with any sinister purpose or in a fraudulent or deceitful manner. Although this court concluded that Sun Life abused its discretion by denying Lee's claims, that is not the same as finding that Sun Life acted in bad faith. Sun Life did perform an investigation, albeit one that proved to be inadequate. And although Sun Life erroneously concluded that the trestle was not "open to the public," its position was not completely devoid of merit.

Similarly, the third *Hummel* factor of deterrence does not favor Lee. Not only is there a lack of any evidence of bad faith, but Sun Life already has in place measures designed to eliminate bias and promote accuracy in its claims review process. Declaration of Oriana Harris (docket #37), ¶¶ 2-11.

With respect to the fourth *Hummell* factor, Lee sought only to obtain benefits for herself and not for other participants in the AD&D Plan and did not succeed on significant legal issues that would benefit other participants. *See Oster v. Barco of California Employees' Retirement Plan*, 869 F2d 1215, 1222 (9th Cir 1988) (finding fourth *Hummell* factor weighed against awarding fees where plaintiff sought "benefit for himself, regardless of the impact such a payment might have on the future beneficiaries of the Plan").

Although these three *Hummel* factors do not support an award of fees and costs to Lee, the second and fifth *Hummel* factors clearly support such an award. Sun Life concedes that it has the ability to satisfy an award of fees, and Lee obtained a successful result.

"No one of the *Hummell* factors, however, is necessarily decisive, and some may not be pertinent in a given case." *Smith*, 746 F2d at 590 (citation omitted). Because an employee's

3 - AMENDED FINDINGS AND RECOMMENDATIONS

resources are generally limited, and ERISA is intended to afford plan participants effective

access to the courts, the ability of the defendant to satisfy an award of fees is a key factor. *Id*.

"Based on this factor alone, absent special circumstances, a prevailing ERISA employee plaintiff

should ordinarily receive attorne''s fees from the defendant." *Id*. Although three of the *Hummell*

factors disfavor an award of fees and costs to Lee, no special circumstances suggest that such an

award to her would be unjust. Thus, this court finds that Lee is entitled to an award of fees and

costs.

**II.    Amount of Costs**

Lee has filed a separate Bill of Costs in the amount of $224.00 (docket #58). Sun Life

has not opposed the amount of these costs. Lee reasonably incurred the costs listed, all of which

are properly taxable pursuant to 28 USC § 1920. Therefore, the Bill of Costs should be granted

in the sum of $224.00.

**III.    Amount of Attorney Fees**

To determine attorney fees in ERISA cases, the Ninth Circuit has adopted the "hybrid

lodestar/multiplier approach used by the Supreme Court in *Hensley v. Eckerhart*, 461 US 424

(1983)." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F3d 1041, 1045 (9th Cir 2000) (citations

omitted). The district court first "must determine a 'lodestar' amount by multiplying the number

of hours reasonably expended on the litigation by a reasonable hourly rate." *D'Emanuele v.

Montgomery Ward & Co., Inc.*, 904 F2d 1379, 1383 (9th Cir 1990). The district court then may

increase or decrease the lodestar fee based on certain factors that are not subsumed within the

initial calculation of the lodestar. *Id*. "Such upward or downward adjustments are the exception

rather than the rule since the lodestar amount is presumed to constitute a reasonable fee." *Id*. Here, Lee does not seek an adjustment of the lodestar amount.

In determining the lodestar figure, the district court should exclude hours that were not reasonably expended. *Id* at 1384. Once the number of hours is set, the district court must "determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Id* (citation omitted). The determination of the reasonable fee "is not made by reference to rates actually charged," but by reference to "the prevailing market rate in the community for similar services of lawyers of reasonably comparable skill, experience and reputation." *Id* (internal quotation and citation omitted).

A.   **Number of Hours**

In the initial Statement of Services submitted with her motion, Lee sought to recover attorney fees of $80,912.50 based on 225.25 hours expended by Brian Whitehead at $350.00 per hour and 23.0 hours expended by his paralegal at $125.00 per hour. Sun Life objected to the number of hours as excessive for several reasons: (1) the majority of Mr. Whitehead's time entries contain vague and inadequate descriptions; (2) many entries are block billed; (3) time is billed using only hourly and quarter-hourly increments; (4) time related to pre-litigation activities is not compensable in ERISA cases; and (5) clerical work is not compensable. Lee responded to these objections by filing an Amended Statement of Services which includes more detailed time entries and deletes pre-litigation activities and clerical work, thus reducing the attorney fee request to $71,925.00 based on 205.50 hours expended by Mr. Whitehead.

Sun Life still objects to the Amended Statement of Services as flawed because: (1) the majority of Mr. Whitehead's time is block billed and his entries contain vague and inadequate

descriptions; (2) Mr. Whitehead failed to keep contemporaneous time records; and (3) the time is billed using hourly and quarter-hourly increments.  Some of these objections are well-taken.

### 1.    Block Billing and Inadequate Descriptions

Sun Life complains that most of Mr. Whitehead's time entries in his Amended Statement bill a total number of hours for more than one task without specifying what portion of the time was spent on each task.  With this type of block billing, "the court cannot assess the reasonable number of hours spent on a given task when the time spent on the task is not segregated from time spent on other tasks." *Frevach Land Co. v. Multnomah County, Dept. of Environmental Serv.*, 2001 WL 34039133 * 9 (D Or December 18, 2001).  In this district, fees requested for block billing "of three hours or more are susceptible to being disallowed" or at least significantly reduced. *Id* at *9, *11.  *See also Message from the Court Regarding Attorney Fee Petitions* (found at www.ord.uscourts.gov/examples-and-guidelines).

Of the time entries objected to by Sun Life as block billing, only a few are for more than three hours, and most of those are for time spent researching and drafting the response to the motion for summary judgment and cross-motion for summary judgment (1/12-26/09), researching and drafting the reply to Sun Life's response to the cross-motion (2/21/09 - 3/3/09), searching for former Sun Life examiners and evidence of misconduct by Sun Life claim examiners (8/24/09 - 9/2/09), and researching and drafting a response to Sun Life's objections to the Findings and Recommendation (9/4-8/09).  Contrary to Sun Life's characterization, these time entries primarily describe one task.  Therefore, they should not be disallowed or reduced as improper block billing.

6 - AMENDED FINDINGS AND RECOMMENDATIONS

Unfortunately, the detail added by Mr. Whitehead does not cure the vagueness of the time entries. For example, it is unhelpful to the court to know that he drafted the response to the motion for summary judgment, reply to the cross-motion, and response to objections to the Findings and Recommendation "on a yellow notebook pad, having the file in front of" him to which he referred "at frequent intervals . . . to insure [*sic*] the response was accurate, legally sufficient and completed in the proper format." Suppl. Patton Decl., Ex. A, pp. 4 (1/23/09), 5 (1/29[*sic*]/09, 1/25/09), 6 (2/27/09), 9 (9/4/09, 9/6/09, 9/7/09). This court presumes that all attorneys draft pleadings, whether by hand or on a computer, by frequently referring to the file for accuracy. Similarly, it is unhelpful to know that he did research "sitting at [his] computer examining, googling, using various search engines to find the information sought." *Id*, pp. 7-9 (8/24/09 - 9/01/09). Instead, it would be more helpful for the court to know how much time he spent researching each discrete legal issue or what specific on-line search terms he used. Despite this lack of detail, the entries are sufficient for this court to assess the reasonableness of the number of hours and to conclude, as discussed below, that the hours should be reduced as excessive.

## 2.    Failure to Keep Contemporaneous Time Records

"If prevailing parties intend to seek attorney's fees, their attorneys must keep meticulous contemporaneous time records . . ." *Frevach*, 2001 WL 34039133 at *10, quoting *Ramos v. Lamm*, 713 F2d 546, 553 (10th Cir 1983); *Settlegoode v. Portland Pub. Schs.,* 2005 WL 1899376, *6 (D Or August 9, 2005) (attributing considerably less weight to counsel's estimated hours than to contemporaneous time entries). Failing to keep contemporaneous time records raises the risk that time descriptions will be inaccurate.

7 - AMENDED FINDINGS AND RECOMMENDATIONS

As Sun Life points out, it appears that Mr. Whitehead did not keep meticulous contemporaneous time entries, but created time descriptions many years after the fact. Whitehead had a contingency fee agreement with his client.  Whitehead Decl., ¶ 12.  Most of his time entries are for large blocks of time are rounded off to the nearest hour.  This leads to the reasonable suspicion that he knew that he had worked on this case on a particular day, but failed to keep precise time records and later reconstructed the number of hours spent.  In fact, nowhere does Mr. Whitehead state that the Statement of Services is based on daily contemporaneous time records.  Instead, he states only that "[a]ll hours includ[ed] on the attached Statement of Services reflect hours reasonably expended on this claim."  *Id*, ¶ 19.  In addition, this court notes a time entry for reviewing each and every document filed in this case listed sequentially by the docket number.  In other words, it appears as if someone simply went through the docket sheet after the fact and added a time entry to correspond to each docket entry.

However, this court disagrees with Sun Life that the entire attorney fee request should be denied for this reason.  Instead, this court will view it merely as a best estimate of the hours expended by Mr. Whitehead.

### 3.    Billing in Hourly and Quarter-Hourly Increments

The Ninth Circuit has expressly criticized billing in quarter-hour increments because that practice tends to inflate billing records.  *Welch v. Metro. Life Ins. Co.*, 480 F3d 942, 949 (9th Cir  2007).  All of Mr. Whitehead's time entries for less than an hour are either for a quarter-hour or a half-hour.  Each review of a document filed in this case is listed as a quarter-hour.  In addition, as previously noted, all other entries use one hour increments.  Indeed, the Statement of Services contains no 0.75 hour entries, and over 91% of plaintiff's counsel's hours (188 hours

out of a total of 205.5) are billed in increments of one hour.  As a result, the number of hours is inflated.

Although this court does not condone this type of billing practice, it rejects Sun Life's entreaty to deny the entire attorney fee request.  Instead, it will reduce all 20 quarter-hour time entries to one-tenth hour, for a total reduction of 3.0 hours (from 5.0 to 2.0 hours).

**4.    Excessive Time**

Sun Life notes several specific time entries as excessive.  First, it objects to the entry for 3.0 hours on 5/6/08 for "[p]reparing of initial disclosures, pursuant to Rule 26."  Suppl. Patton Decl., Ex. A, p. 2.  No such disclosures were filed.  In fact, in an ERISA case, the court only reviews the administrative record such that initial disclosures are not necessary.  Thus, these 3.0 hours should be deducted.

Second, Sun Life objects to 3.0 hours (1.5 hours each way) for travel to Portland and back to Salem on 3/9/09 for oral argument on the cross-motions for summary judgment.  *Id*, p. 6. It only takes 45 to 60 minutes to drive from Salem to Portland.  Because a more reasonable time for two round-trips is 2.0 hours, 1.0 hour should be deducted.

Third, Sun Life contends that 1.0 hours to review interest rates on 12/30/09 is excessive. *Id*, p. 10.  This court agrees that reviewing interest rates should not take that long, especially given that the Treasury bill rates are readily available on-line.  A more reasonable charge is .5 hour.  Thus, .5 hour should be deducted.

This court's review of the Amended Statement of Services reveals additional excessive hours.  First, after Sun Life filed its second motion for summary judgment on January 9, 2009, Mr. Whitehead spent a total of 28 hours performing legal research and another 30 hours drafting

the response and cross-motion (which simply incorporated the response), for a total of 58 hours.
The response addressed the following four issues in about 20 pages: (1) the appropriate standard
of review based on Sun Life's structural conflict of interest; (2) whether the decedent committed
a trespass; (3) whether the criminal act exclusion is ambiguous; and (4) whether the rule of
*contra proferentem* applies. He then spent 10.5 hours researching and drafting the four page
reply to the cross-motion. The total number of 68.5 hours translates into working six hours a day
for over 11 days or eight hours a day for over eight days. Based on this court's experience in
reviewing attorney fee petitions and dealing with the issues presented by the parties in this case,
it concludes that the number of hours is unreasonable and should be reduced by at least 25%.
Thus, the hours incurred on the summary judgment motions should be reduced by 17 hours.

Second, from August 24 to September 2, 2009, Mr. Whitehead spent a total of 23 hours
placing Craig's List ads and searching on-line to find a former Sun Life examiner to provide
evidence of misconduct. He also spent another four hours on September 1, 2009, reviewing
exhibits in another case. As he admits, all this effort came to nothing. Whitehead Decl., ¶¶ 15-
17. Given that Sun Life had an admitted structural conflict of interest, it is questionable that
seeking evidence of nefarious and despicable claims practices would significantly alter the
situation. If Mr. Whitehead's other time entries were not suspect, this court would be inclined to
give him the benefit of the doubt. However, given the clear excessiveness of his other time
entries, these should be reduced as well by 25%, for a total reduction of 6.0 hours.

In sum, the number of hours should be reduced from 205.5 to 175.0 hours , after
deducting 3.0 hours for quarter-hour billing increments; 3.0 hours for initial disclosures; 1.0 hour

for travel; .5 hour for interest rate review;  17 hours for the summary judgment motions; and 6.0

hours for searching for a claims examiner witness.

**B.    <u>Hourly Rates</u>**

Sun Life objects to the hourly rate of $350.00 requested by Mr. Whitehead and suggests

that a more reasonable hourly rate is $225.00.  First, it argues that Mr. Whitehead did not support

his initial request with the 2007 OSB Economic Survey as required by this court.  However, in

the Reply, Mr. Whitehead corrected that initial oversight by favorably comparing this requested

hourly rate to the 2007 OSB Economic Survey submitted by Sun Life.  Patton Decl., Ex. A.

Second, Sun Life argues that the hourly rate should be based on lawyers of comparable

skill, experience and reputation in Salem where Mr. Whitehead's office is located.

Mr. Whitehead disagrees and seeks to compare his hourly rate to lawyers in Portland where the

courthouse is located.  "[The general rule is that the rates of attorneys practicing in the forum

district . . . are used." *Gates v. Deukmejian*, 987 F2d 1392, 1405 (9th Cir 1993).  Here the forum

district is the District of Oregon.  Whether the case is pending in the federal courthouse in the

Portland, Eugene, Medford or Pendleton Divisions is irrelevant since all of these courthouses are

in the forum district.  Instead, the relevant community for the purpose of determining the

prevailing market rate for an Oregon attorney is where the lawyer practices.  Hourly rates for

lawyers in Portland are higher than in smaller communities in Oregon due to more expensive

overhead and salaries.  Thus, even though Sun Life removed this case from Yamhill County

Circuit Court to federal court, to award Portland rates to a Salem lawyer who intended to litigate

this case close to Salem would be a windfall.

11 - AMENDED FINDINGS AND RECOMMENDATIONS

Mr. Whitehead has practiced law since 1983 and specializes in workers' compensation and personal injury law.  Whitehead Decl., ¶ 6.  According to the 2007 OSB Economic Survey, a lawyer with 21-30 years of experience in the "Upper Valley" (where Salem is located) has a median hourly rate of $180.00, an average of $211.00, with the 75th percentile at $165.00 and the 95th percentile at $285.00.  Patton Decl., Ex. A, pp. 3, 6.  For a plaintiff's personal injury lawyer in the Upper Valley, the average is $209.00, the median is $190.00, the 75th percentile is $256.00, and the 95th percentile is $275.00.  *Id*.  All of these rates are substantially lower than $350.00 per hour requested by Mr. Whitehead.  Even if Mr. Whitehead is placed in the 95th percentile, the comparable hourly rate is no more than $275.00-285.00.

Mr. Whitehead seeks to justify a higher rate by pointing to his actual earnings over the past three years of $378.39 based on a 40-hour work week and $552.00 based on a 30-hour work week.  This approach ignores the applicable standard which is not based on actual earnings, especially when based on contingency fee recoveries, but on lawyers of comparable skill, experience and reputation.  Mr. Whitehead has not submitted any evidence as to how he compares to other comparable Salem lawyers other than his own subjective opinion that he has greater than average experience and makes greater than average wages.  Furthermore, based on his lack of experience with ERISA cases, Mr. Whitehead obtained the assistance of Megan Glor, a Portland attorney who specializes in ERISA litigation.  In 2008, this court found that $250.00 was a reasonable hourly rate for Ms. Glor.  *Teicher v. Regence Health and Life Ins. Co.*, 2008 WL 5071679, *4 (D Or November 24, 2008).  This court sees no reason why Mr. Whitehead's hourly rate should exceed that of Ms. Glor.  Therefore, this court finds that a reasonable hourly rate for Mr. Whitehead is $250.00.

C.    **Conclusion**

Based on the foregoing, Lee should be awarded attorney fees of $43,750.00, calculated as 175.0 hours at $250.00 per hour.

IV.    **Prejudgment Interest**

The Ninth Circuit has held that a district court may award prejudgment interest in ERISA cases to compensate a plaintiff for the loss he incurred as a result of the defendant's nonpayment of benefits. *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F3d 974, 988 (9th Cir 2001). Whether to award prejudgment interest "'is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities.'" *Shaw v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan* , 750 F2d 1458, 1465 (9th Cir), *cert denied*, 471 US 1137 (1985), quoting *Wessel v. Buhler*, 437 F2d 279, 284 (9th Cir 1971). Appropriate considerations include whether the "financial strain" of paying prejudgment interest would injure other plan beneficiaries and whether the defendants acted in bad faith. *Id*; *see also Dishman*, 269 F3d at 988.

"[T]he interest rate proscribed for post-judgment interest under 28 USC § 1961 is appropriate for fixing the rate of prejudgment interest 'unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate.'" *Nelson v. EG & G Energy Measurements Group, Inc.*, 37 F3d 1384, 1391 (9th Cir 1994), quoting *Western Pac. Fisheries, Inc. v. S.S. President Grant*, 730 F2d 1280, 1289 (9th Cir 1984). The court applies the interest rate that was in effect at the time payment was due to the plaintiff, not the rate applicable as of the date of the judgment. *Id*. To cover the costs of the lost investment potential of funds to which a plaintiff was entitled, the interest rate should "calculated as though the plaintiffs had

invested the withheld funds at the 52-week Treasury bill rate and then reinvested the proceeds annually at the new rate." *Id* at 1392.  The Treasury bill rate at the beginning of each year "present[s] a slightly more accurate reflection of a 52-week Treasury bill investment" than "the average during each year." *Id* n3.

Lee argues that the court should award prejudgment interest because Sun Life acted in bad faith by denying her claim and would suffer no financial hardship if they were ordered to pay interest.  As noted, the court did not find that Sun Life acted in bad faith.  Nonetheless, it finds that Lee is entitled to an award of prejudgment interest.  There is no evidence that Sun Life would suffer any financial hardship by paying prejudgment interest to Lee nor that any other participant of the AD&D Plan would suffer as a result.  Had Sun Life properly reviewed Lee's claim, Lee would have received long ago the benefits to which she is entitled.  Thus, Lee is entitled to an award of prejudgment interest to make her whole.

Lee initially sought an award of prejudgment interest of $89,017.64 based on 5.02% interest calculated from September 7, 2006, when she first applied for benefits, through January 8, 2010, the date of the judgment.  However, in response to Sun Life's objections, Lee has recalculated the amount of interest as $59,908.72 based on the Treasury bill rates in effect on September 7, 2006, and on each September 7 thereafter through January 8, 2010.

Sun Life first disputes the accrual date for prejudgment interest and argues that it should be March 29, 2007, when it issued its initial denial of Lee's claim for AD&D benefits.  To claim interest due from the date the beneficiary of the policy first applies for benefits, Lee cites *Caldwell v. Life Ins. Co. of N. Am.*, 287 F3d 1276, 1287 (10th Cir 2002).[1]  *See also Lutheran*

---

[1]  Because Lee cited this case incorrectly, this court initially was unable to locate it.

14 - AMENDED FINDINGS AND RECOMMENDATIONS

*Med. Ctr. of Omaha, Neb. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan*, 25 F3d 616, 623 (8th Cir 1994) (holding that prejudgment interest should accrue from the date on which a claimant first filed her claim), *abrogated on other grounds, Martin v. Arkansas Blue Cross & Blue Shield*, 299 F3d 966 (2002) (*en banc*).  In contrast, Sun Life points to *Nichols v. UNUM Life Ins. Co. of Am.*, 287 F2d 1088, 1094-95 (ND Ca 2003), which rejected as "unfair" the accrual of interest measured from the application date.  Instead, it found that prejudgment interest should not begin to accrue until the insurer was able to conduct a "routine and reasonable investigation.  *Id* at 1094.  Once an investigation occurred and the insurer became aware of facts that exposed it to liability, then the "time of entitlement," or accrual date, can be determined.  *Id*.  In that case, the accrual date was approximately six months after the plaintiff filed the claim.  *See also Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F3d 220, 223-24 (1st Cir 1996) ("Ordinarily, a cause of action under ERISA and prejudgment interest on a plan participant's claim both accrue when a fiduciary denies a participant benefits.").

      Given the absence of any controlling Ninth Circuit authority, this court is persuaded by the analysis in *Nichols*.  Setting the accrual date in this way makes a participant whole for the period during which the fiduciary withholds money legally due.  However, that does not mean that the accrual date should be six months after Lee applied for AD&D benefits, as urged by Sun Life.  The Policy in this case required Sun Life to send a written notice of decision on a claim "within a reasonable time after Sun Life receives the claim but not later than 45 days after receipt of the claim," unless it requests "extensions of time" which specifically explains why more time is needed.  Declaration of Oriana R. Harris ("Harris Decl.") (docket #21), Ex. A, p. 28.  The record contains no evidence that Sun Life made any requests for extension of time.

15 - AMENDED FINDINGS AND RECOMMENDATIONS

Thus, Lee was entitled to a decision on her claim within 45 days after Sun Life received the claim.

The parties dispute when Sun Life received the claim.  Lee claims that she applied for AD&D benefits when she submitted her claim to the Plan Administrator on September 7, 2006. Declaration of Susan Lee, ¶ 2.  However, the Plan Administrator, who signed and dated the form on October 11, 2006, only checked the box for "Dependent" life insurance in the amount of $25,000 on the claim form it sent to Sun Life.  Harris Decl., Ex. B, pp. 178-79.  On October 24, 2006, Sun Life paid Lee $25,010.27 in benefits under the Life Policy.  *Id*, p. 162.  Not until January 24, 2007, did Sun Life receive a claim for AD&D benefits.  *Id*, pp. 154-55.  The Plan Administrator signed and dated that form "10/10/07" (which likely should have been "10/10/06") and again on "01/22/07" (with the handwritten notation of "second attempt") which amended the initial claim by also checking the box for "Accidental Death" insurance in the amount of $500,000.00.  *Id*.  No explanation has been provided as to why the initial claim form did not include AD&D benefits or why the second claim form was not sent to Sun Life until January 22, 2007.  Sun Life received the claim for AD&D benefits on January 24, 2007, and issued its initial denial about two month later on March 29, 2007.  *Id*, pp. 105-08.

///

///

///

///

16 - AMENDED FINDINGS AND RECOMMENDATIONS

Until Sun Life received the second claim form, it had no reason to know that Lee was making a claim for AD&D benefits. Once it received the claim form on January 24, 2007, it had 45 days to send a written decision on that claim. Thus, the appropriate accrual date for prejudgment interest is March 10, 2007, 45 days after Sun Life received Lee's application for AD&D benefits.

Sun Life also submits that the interest rate should be calculated on January 1 of each year after 2006. The Ninth Circuit's language in *Nelson* is not concise and does not state whether the annual reinvestment date is the start of each calendar year or the anniversary date of the initial entitlement. However, if the proceeds are reinvested annually, then the most reasonable interpretation is to calculate the interest rate on the date of entitlement and then to recalculate it on each anniversary date thereafter. Accordingly, the applicable interest rate for prejudgment interest in this case, based on the weekly average 1-year constant maturity Treasury bill yield, is 4.93% for the week ending March 16, 2007, 1.52% for the week ending March 14, 2008, .70% for the week ending March 13, 2009, and .39% for the week ending March 12, 2010. Declaration of William T. Patton (docket #66), Ex. C; http://www.utd.uscourts.gov/documents/int2010.html. Neither party has yet calculated the amount of prejudgment interest using that formula.

///

///

///

///

///

17 - AMENDED FINDINGS AND RECOMMENDATIONS

*///*

## RECOMMENDATIONS

For the reasons set forth above, Lee's motion for attorney and prejudgment interest should be GRANTED in part and DENIED in part, as follows:

1. Lee's request for attorney fees should be GRANTED in the amount of $43,750.00; and

2. Lee's request for prejudgment interest should be GRANTED as calculated from the accrual date of March 10, 2007, and recalculated each anniversary date thereafter.

In addition, Lee's Bill of Costs (docket #58) should be GRANTED in the amount of $224.00.

## SCHEDULING ORDER

Objections to the Amended Findings and Recommendation, if any, are due April 20, 2010.  If no objections are filed, then the Amended Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 1st day of April, 2010.

_/s/ Janice M. Stewart _____
Janice M. Stewart
United States Magistrate Judge

18 - AMENDED FINDINGS AND RECOMMENDATIONS